JOE WEILER, Elizabeth Boehm, Tony Weiler, and Christina Dixon, Respondents, v. EMIL KRAUTH, Appellant.

(233 N. W. 898.)

Opinion filed December 22, 1930.

*S. P. Rigler,* for appellant.

*P. S. Jungers,* for respondents.

BURR, J. The plaintiffs bring action to recover upon an agreement signed by the defendant, as follows:

## "AGREEMENT

"I herewith promise and agree to pay to Mrs. Magdalena Gatt-schemke who's whereabouts are unknown at the present time $201.05 as soon as this person can be located and upon the delivery of a Quit-claim Deed for the $E\frac{1}{2}$ of $SE\frac{1}{4}$ and $SW\frac{1}{4}$ of $SE\frac{1}{4}$ and $E\frac{1}{2}$ of $SW\frac{1}{4}$ of section 12, township 141, range 89, west of the 5th P. M. Mercer county, North Dakota, signed by her.

"In case this person can not be found within a year from now, then the above mentioned amount shall be paid to Joe Weiler, Elizabeth Boehm, Tony Weiler and Christina Dixon, to be divided among them in equal parts. Interest on above shall be paid at the rate of 5% per annum.

"This 24th day of April 1926.

"Emil Krauth.

"Fritz Conrath.

"Mary. O'Heer."

It is admitted that none of the parties to this agreement was able to ascertain the "whereabouts" of Mrs. Magdalena Gattschemke within a year from the date of the instrument or to obtain a quit claim deed from her as required. No one could learn that she was alive, or if living, where. It is also admitted the defendant has not paid any part of this $201.05 to anyone.

The plaintiffs, together with Mrs. Gattschemke and two sons Simon and Leonard—not mentioned in the instrument—are the children of one Mrs. Weiler, deceased. The mother had been the owner of the land described in the instrument and sold the same to Simon under contract for $1,600 and Simon agreed to pay all taxes. Simon was the owner of another quarter section which he had mortgaged to the defendant. This mortgage had been foreclosed and Sheriff's deed issued to the defendant. Simon defaulted on the contract and was willing to sur-render the land. The defendant had transacted business for the plain-tiffs and the mother, had drawn the mother's will, and appears to have been a confidential advisor for the family. Some of the plaintiffs con-sulted him as to what they should do with the mother's land and agreed that they would sell the land to the defendant. One of the plaintiffs testifies that the defendant said "You people can do as you feel like,

you can buy it or I can buy it, but I would like to have it myself, because I have Simon's land already and he has got to have this in order to have pasture for this land otherwise he cannot sell it." The mother and family were natives of Southern Russia, and the daughter Mrs. G. had remained there. It was learned she had removed to Siberia and all trace of her was lost. The question of the probate of the mother's estate became important. After the defendant agreed to buy the land it was decided that owing to the decease of the mother, the difficulty of getting service on all of the heirs, and that Simon had failed to pay the taxes it would be better to allow the defendant to get a tax deed, the defendant would then get a judgment quieting title in himself and after he paid all expenses he would divide the remainder of the purchase price equally between the plaintiffs and the said Mrs. G. In accordance with the agreement the plaintiffs permitted their mother's land to be sold at tax sale, and a tax deed to be issued to the defendant; they assisted him to get a judgment quieting title in himself, gave him deeds to the land and each received $201.05. This left the amount represented by the instrument.

When it became apparent no word could be obtained from the sister, Mrs. G., the parties modified the original agreement so far as the disposition of the remainder of the purchase price was concerned and defendant signed and delivered to them the instrument sued upon.

The case was submitted to a jury who found in favor of the plaintiffs. Judgment was entered in accordance with the verdict and defendant appeals.

The defendant in his answer asserts that he is prepared to pay this $201.05 to Mrs. G. as soon as he gets the quit claim deed from her, that this sum represents her interest in her mother's estate and if he pays the plaintiffs he is still liable to her or her heirs. He also alleges that there is no consideration for this contract and agreement because he had already paid to each of the plaintiffs his share or interest in that part of the mother's estate represented by the land.

Appellant specifies nine instances wherein he claims the evidence does not sustain the verdict, and ten specifications of error based upon rulings of the court, etc. All of these specifications are based upon his theory that the amount represented by this contract belongs to Mrs. Gattschemke, as her share of her mother's estate; that the agreement

can be considered merely as "an offer to make a gift" to plaintiffs; that this agreement to make a gift had not been carried out and is not enforceable; that the plaintiffs have not signed the instrument; and that the object was unlawful in that it was "an attempt to defeat the right of creditors of a deceased person and some of the heirs by avoiding probate proceedings."

The judgment must be affirmed. The defendant is treating this as a purchase of the interest of Mrs. G. in her mother's estate. The land ceased to belong to the mother's estate, it was lost because of failure to pay taxes. Defendant had no contract with Mrs. G.; she had no interest in the land which she could sell to him and she made no sale; her interest was lost through the tax sale. She claims no fraud and there was no fraud.

Defendant's title rests upon his tax deed and the judgment quieting title in him. This disposed of any claim Mrs. G. or her heirs had in the land. The plaintiffs surrendered their right to prevent tax deed. True, they wanted to protect their sister Mrs. G. and give her something; but clearly preferred to attend to that themselves rather than have a portion of the purchase price remain with defendant indefinitely. Appellant's contract was with the plaintiffs only. He was to pay them at least $1,400 for the land and out of this sum he was to deduct the costs and pay the remainder to them in accordance with a certain procedure. The first agreement was that he would pay in five equal shares. The parties to the agreement—the plaintiffs and the defendant—had the right to change the method of payment if they saw fit. They did change the terms to the terms set forth in the instrument sued upon. The fact that the plaintiffs did not sign it is immaterial in this suit. None of the plaintiffs repudiates the agreement. The amount still owing the plaintiffs under the contract is $201.05 with interest. The defendant admits he has not paid it. Even if the parties had made an agreement for the benefit of Mrs. G. they could rescind such agreement before acceptance by her, and did do so. See § 5841, Rev. Code. There is no reversible error shown in any of the specifications, so the judgment is affirmed.

Burke, Ch. J., and Nuessle, Birdzell, and Christianson, JJ., concur.